LNORRIS, Chief Judge.
Debra James appeals the trial court’s ruling finding that her children were in need of care and that continuing custody with the State Office of Community Service (OCS) was in the best interest of J.T. and G.T. We amend and remand.

Facts

Debra married Bradley Thompson when she was 15 years old; they had a son, who is not involved in the instant matter. Four months after they were married, Debra left Thompson, met and moved in with Clyde Terrell, and G.T. was born November 16, 1987. Due to his physical and mental abuse, Debra left him, met and “married”[1] Morris Woods, and J.T. was born October 30, 1990. Debra left Woods because he abused her, divorced Thompson and married Donnie James. Debra later left Donnie and is currently involved with another woman in what she described as a nurturing and stable relationship. The parents have never litigated legal custody of J.T. and G.T.
In December 1999, Debra was talking to a friend who informed her that Woods had been arrested for aggravated rape of a young girl and was currently incarcerated. Overhearing the conversation, J.T. started crying and told her mother that Woods had done the same thing to her and if she had said something she could have stopped him from hurting the other little girl. Debra reported the incident to the authorities and OCS set up an appointment for J.T. with Dr. Anne Springer, a pediatrician.
On the morning of J.T.’s appointment, G.T. and Debra got into a confrontation and G.T. threatened suicide. G.T. was admitted into Brentwood and it was discovered that while in her biological father’s physical custody, G.T. was sexually molested by him. G.T. lived with Terrell from the time she was five until [2she turned 11 years old. Dr. Springer examined both girls and confirmed that there had been penetration.
Pursuant to an Instanter Order, OCS removed J.T. and G.T. from Debra’s custody on December 14, 1999 for failure to supervise and protect the children against sexual abuse. OCS filed a petition on January 6, 2000, alleging the children were in need of care. At the Continued Custody Hearing on January 25, Terrell and Woods[2] stipulated that the children were in need of care and Terrell expressed wishes to surrender his rights to G.T. Thompson denied being the biological fa *1222 ther and as legal father, expressed plans to surrender his rights. At this hearing, the trial court continued custody of the children with OCS.
An adjudication hearing was conducted on March 27 and 30, at which time the District Court found that the children were in need of care because they had been sexually abused by their fathers and inadequately supervised by their mother. Custody of G.T. and J.T. was continued with OCS. Debra appeals this judgment.

Law

“Allegations that a child is in need of care must assert one or more of the following grounds: (1) The child is the victim of abuse[3] perpetrated, aided, or tolerated by the parent ... (2) The child is a victim of neglect. (3) The child is without necessary food, clothing, shelter, medical care, or supervision. (4) As a result of a criminal prosecution, the parent has been convicted of a crime against the child who is the subject of this proceeding, or against another child of the parent, and the parent is unable to retain custody or control or the child’s welfare is otherwise endangered if left within the parent’s custody or control. (5) The conduct of the parent ... constitutes a crime against the child or against any other child of that Dparent.” La. Ch.C. art. 606. “A child whose parent is unable to provide basic support, supervision, treatment, or services due to inadequate financial resources shall not, for that reason alone, be determined to be a child in need of care.” La. Ch.C. art 606B. The state shall have the burden to prove the allegations of a child in need of care petition by a preponderance of evidence. La. Ch.C. art. 665; State in Interest of H.P., 98-1015 (La.App. 3d Cir.10/28/98), 721 So.2d 546.
After an adjudication that a child is in need of care, and prior to entering a judgment of disposition, the court shall conduct a disposition hearing. La. Ch.C. art. 678, et seq. The court shall not remove a child from the custody of his parents unless his welfare cannot be adequately safeguarded without such removal. La. Ch.C. art. 682; State in the Interest of A.R., 99 0813 (La.App. 1st Cir.9/24/99), 754 So.2d 1073.

Analysis: Burden of Proof

Debra argues that the trial court incorrectly shifted the burden of proof away from OCS and to her. She bases this allegation on comments made by the trial court, specifically the trial court stated that “[t]he fact that she’s up here now trying to get the children back without taking advantage of what’s being offered to her ... doesn’t speak well of her.... It’s almost like the harder she gets up here and tells me they ought to be returned to her quicker, the more I’m inclined to think that’s not an appropriate place to place the children.” The trial court further told her to “put your evidence on at your own risk.”
The state had the burden of proving that the children were in need of care by a preponderance of the evidence. We do not construe the trial court’s remarks |4as shifting the burden of proof to Debra. Additionally, even if the trial court had erred by shifting the burden, we would still find that the evidence clearly showed that G.T. and J.T. were children in need of care, as it was uncontested that they had been victims of sexual abuse by their bio *1223 logical fathers. This assignment of error lacks merit.

Judgment of Adjudication

Debra argues that the trial court erred in finding that G.T. and J.T. were in need of care for her failure to supervise and protect them. She avers that there is no evidence she participated in any direct abuse or that she allowed, aided or tolerated any sexual abuse perpetrated by the girls’ natural fathers. Furthermore, when she discovered that her daughters were abused, she immediately informed the authorities and is doing all she can to help prosecute the offenders. Debra argues that Woods is in jail and Terrell has not had access to his daughter since she found out about the abuse, thus the men no longer present a danger to the girls and that they should be returned to her custody. OCS argues that by fading to supervise G.T. and J.T., Debra allowed the girls to be molested and has shown a pattern of choosing men who are prone to abuse young girls and she does not currently have the skills to protect her daughters.
According to testimony, while Debra was living with Terrell, she heard that he raped his oldest daughter. Debra testified that she asked Terrell and others about the accusation and did her best to find out if it was true; however, Terrell denied the allegations and Debra could not confirm them. In 1996, after Debra and Terrell separated, OCS investigated a report of physical abuse perpetrated on G.T. by Terrell. It was at this time that Debra told OCS about the allegation that Terrell had raped his oldest daughter. At that time, Debra assured OCS that G.T. would reside with her and she would not be returned to Terrell’s physical custody; OCS took no steps to remove G.T. from her father or follow up to ensure that Terrell 15would not regain physical custody of his child. Despite Debra’s assurances, Terrell, with the aid of a deputy sheriff, obtained physical custody of G.T. and Debra testified that she tried to stop him, but was unsuccessful. Notably, neither Debra nor OCS put on any evidence regarding the time frame of the sexual abuse except that it never occurred in Debra’s house or in her presence. G.T. refuses to discuss the specifics of the molestation, merely acknowledging that she was in fact sexually abused by Terrell, her natural father.
Debra testified that Woods had raped her on two separate occasions, once while they were living together and once after they had separated. Despite this, Debra allowed Woods to have weekend visitation with J.T. OCS alleges that because Woods raped her, Debra should have been alerted to the fact that he posed a danger to J.T. Debra testified that Woods never abused J.T. while he was in her home or her presence; and before J.T. said Woods had abused her, Debra never considered him a risk to the girl.
OCS presented testimony from Daniel Lonowski, an expert in clinical psychology, who opined that Debra could ultimately have her children safely returned to her, but at the present time, without some assurances that she understands how her dependent personality characteristics undermine her ability to provide appropriate supervision, returning the children posed some risk.
On this record, the trial court was plainly wrong to find that Debra should have been aware of the risks Terrell and Woods posed to her daughters and that she tolerated their abuse and failed to adequately protect and supervise them. Notably, OCS did not pursue, apart from an initial investigation, the 1996 report that Terrell had abused G.T. The allegation that Terrell had molested his oldest daughter was in the nature of a rumor that Debra could not confirm and apparently not sufficient to prompt OCS to further investigate. Debra’s similar failure to act on this information, apart from questioning Terrell about the allegation and | ¡^searching court records, cannot be deemed toleration of Terrell’s conduct with G.T. The trial court was also plainly wrong to find that because Woods raped Debra, she should have known that he would *1224 abuse J.T. Simply put, the suggestion that Debra should have been suspicious does not lead to the conclusion that she “allowed” or “tolerated” any sexual abuse. However, Terrell and Woods both stipulated that their daughters were in need of care and Debra did not dispute the allegation that her daughters were molested. In sum, G.T. and J.T. were sexually abused by their fathers and the trial court was not manifestly erroneous in adjudicating them children in need of care.

Disposition Judgment

Lastly, Debra challenges the Adjudication/Disposition Judgment, arguing that she is entitled to a separate Disposition Hearing and the trial court erred in not conducting one. La. Ch.C. art. 678 states that the court shall conduct a disposition hearing before entering a judgment of disposition. The trial court signed an “adjudication/disposition” judgment after the adjudication hearing without conducting a disposition hearing. As such, we remand this case to the trial court so that it can conduct a disposition hearing. We further note that OCS did not prove that Debra was guilty of inadequate supervision or allowed or tolerated any sexual abuse of G.T. or J.T. Based on the record before us, a disposition that removed custody of the girls from their mother would not be warranted under Ch.C. arts. 681, 682. State in the Interest of A.R., supra.

Conclusion

We affirm the trial court’s conclusion that G.T. and J.T. are children in need of care because they were sexually abused by their biological fathers. We reverse the finding that Debra allowed or tolerated the abuse of them and the finding that she failed to adequately supervise or protect her daughters. We further find that the trial court erred in issuing a Disposition Judgment without conducting a ^Disposition Hearing. We remand the case to the trial court for a Disposition Hearing in accordance with La. Ch.C. art. 678, et seq. and this opinion.
AMENDED, AS AMENDED AFFIRMED AND REMANDED.

. The marriage was an absolute nullity because she was still married to Thompson. La. C.C. art. 90, 94.

. Woods was incarcerated at the time.

. The definition of abuse includes “any of the following acts which seriously endanger the physical, mental, or emotion health and safety of the child:
(a)The infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person.
(b) The exploitation or overwork of a child by a parent or any other person.
(c) The involvement of the child in a sexual act with a parent or any other person, or the aiding or toleration by the parent of the cáretaker of the child’s sexual involvement with any other person ...”
La. Ch.C. art. 603(1).